UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-106 (JMB/JFD)

UNITED STATES OF AMERICA,

Plaintiff,

v.

BRYAN JOSUE BAUTISTA-DUARTE,

Defendant.

**DEFENDANT'S POSITION ON SENTENCING**

Bryan Josue Bautista-Duarte has admitted that he entered the United States without permission from the government. He pled guilty to reentry of a removed alien from May 7, 2026. He has been detained since that date, about 6 months. He respectfully asks that the Court impose a sentence of time served, followed by no term of supervised release.

Mr. Bautista-Duarte was most recently removed from the United States in May 2025, and he returned without permission. He did so to escape threats he received in Guatemala as noted in the PSR. This will be his first immigration-related conviction. He understands that circumstances have changed in this country, and that unlawful immigration is a top federal law enforcement priority. Being in custody and unable to work has been a big financial strain on his family in Guatemala. He also understands that he will be removed at the conclusion of this case and his state cases, and that he cannot return to the United States without permission. To that end, he has made plans to relocate to Mexico, where he will feel safer than in Guatemala. He has a permit to work and live in Mexico.

There are no objections to the PSR. Counsel filed a letter on September 28, 2026 requesting minor edits. The final PSR has not yet published. The Presentence Report (PSR) finds that the following advisory Guidelines apply:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. § 2L1.2(a) |
| Criminal history enhancement | +6 | U.S.S.G. § 2L1.2(b)(2)(C) |
| Acceptance of Responsibility: | -2 | U.S.S.G. § 3E1.1(a) |
| **Total Offense Level** | **12** | |

The PSR determines a criminal history category of V with a total of 10 criminal history points. Seven of those criminal history points are taken from the *same* criminal history used to enhance Mr. Bautista-Duarte's offense level by 6 levels. In other words, Mr. Bautista-Duarte's criminal history is used to *both* increase his criminal history category to V *and* almost double his base offense level from 8 to 14. With a total offense level 12 and criminal history category V, the advisory range is 27 to 33 months' imprisonment.

Mr. Bautista-Duarte respectfully requests that the Court impose a sentence of time served in custody— 6 months. While this constitutes a downward variance from the advisory Guidelines range, it is sufficient, but not greater than necessary to comply with the § 3553(a) sentencing factors.

## SENTENCING ANALYSIS

### A. Nature and Circumstances of the Offense

A sentence of time served is sufficient considering the nature and circumstances of Mr. Bautista-Duarte's offense. He first entered the United States with a work visa in 2017. He worked in Nebraska and after his seasonal work was completed, he returned to Guatemala at the end of 2017. He received a second work visa and returned to the United

States in April 2018 and worked for the same employer in Nebraska. Around this time, he began receiving threats from drug cartels in Guatemala. Because his father was involved in the cartels, they cartel wanted Mr. Bautista-Duarte to work for them while in the United States. He refused. His father was able to protect Mr. Bautista-Duarte's mother but couldn't protect everyone. Mr. Bautista-Duarte was sent a video where his then partner was executed by the cartel. He could not risk his life by returning to Guatemala, so he overstayed his visa. He moved to Minnesota and began working. Unfortunately, he was arrested, and later pled guilty to three felonies in 2021, 2024, and 2025. He was removed from the United States in May 2025. During his removal proceedings in April 2025, the I-213 form used by Homeland Security noted the following:

> FEAR:
> BAUTISTA states he has fear of returning to Guatemala.

After agreeing to deportation, Mr. Bautista-Duarte stayed in Guatemala (away from his family) for almost a year, but couldn't keep hiding from the cartels, so he returned to the United States in May 2026 without permission from the United States. He was promptly arrested and held at Nobles County Jail until he was transferred into Federal custody.

Mr. Bautista-Duarte accepted responsibility for his offense by pleading guilty pursuant to a written plea agreement with the government. He was not offered fast track but chose to plead guilty regardless. By pleading guilty, he saved the government and Court valuable resources.

**B. Fast-Track Disparity**

Although the government has declined to move for a downward departure under this District's Fast-Track program, Mr. Bautista-Duarte asks that the Court use its discretion to apply an equivalent variance under § 3553(a). This is because Mr. Bautista-Duarte did everything to comply with the District's Fast-Track program: he filed no pretrial motions, promptly agreed to plead guilty as charged, and waived his appellate rights pursuant to a written agreement with the government.

Ordinarily, under these circumstances, the government would move for a 4-level downward departure under U.S.S.G. § 3F1.1 (Early Disposition Program, *eff.* Nov. 1, 2025, *formerly* U.S.S.G. § 5K3.1). However, the government informed that, owing to Mr. Bautista-Duarte's criminal history, it would not so move. In other words, Mr. Bautista-Duarte's criminal history is used in *a third way* to generate a higher Guidelines range. Nevertheless, this Court retains discretion to grant a downward variance to account for Mr. Bautista-Duarte's compliance with the District's Fast-Track program by quickly accepting responsibility and waiving his rights. *See United States v. Jimenez-Perez*, 659 F.3d 704, 711 (8th Cir. 2011) (recognizing the sentencing court's discretion to consider disparity created by Fast-Track programs "among the totality of § 3553(a) factors considered"); *see also United States v. Escolastico-Pena*, No. 11-CR-81, 2011 WL 4448956, at *4 (S.D.N.Y. Sept. 26, 2011) (collecting cases involving "non-Guidelines sentences in recognition of the fast-track disparity").

With the usual 4-level reduction, Mr. Bautista-Duarte would be at a total offense level 8, which, with criminal history category V, yields an advisory Guidelines range of

**15 to 21 months**. Mr. Bautista-Duarte respectfully submits that this ought to be the starting point in the Court's sentencing analysis.

**C. U.S.S.G. § 2L1.2 Unreasonably Double Counts Criminal History**

A time-served sentence is also sufficient because Mr. Bautista-Duarte's Guidelines range derives from a double counting of his criminal history: his prior convictions both increase his criminal history category from II to V *and also* increase his base offense level from 8 to 14. The illegal-reentry Guidelines are unusual in double counting a person's criminal history, and for this reason, courts across the country have rejected them as unduly harsh.

The Supreme Court has long ruled that sentencing courts "may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 101–02 (2007) (cleaned up); *Rita v. United States*, 551 U.S. 338, 351 (2007) (explaining that a district court may grant a variance because "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

The advisory Guidelines for Mr. Bautista-Duarte overstate what is a reasonable sentence because his criminal history is already accounted for in his higher criminal history category V. It is unreasonable to take that same criminal history to then double his base offense level under U.S.S.G. § 2L1.2, from offense level 8 to offense level 14. Without this double counting, Mr. Bautista-Duarte would be in total offense level 6 (base offense level 8, minus 2 for acceptance), which, when combined with criminal history category V, yields an advisory range of **9 to 15 months**. Mr. Bautista-Duarte simply asks to be treated like

most other federal defendants, where his criminal history is accounted for in his criminal history category and the nature and circumstances of his offense—illegal reentry—is accounted for in his offense level. His requested sentence of time served (6 months) is a slight variance.

This Court would not be alone in granting a downward variance based on a policy disagreement with the illegal-reentry Guidelines. Courts across the country have granted downward variances from the illegal-reentry Guidelines because, unlike other Guideline provisions, they increase a defendant's offense level "based on prior convictions rather than offense conduct, effectively counting the defendant's prior record twice in constructing the guideline range." *United States v. Torres-Gomez*, No. 11-CR-237, 2012 WL 1424705, at *3 (E.D. Wis. April 24, 2012); *accord Escolastico-Pena*, 2011 WL 4448956, at *5 (imposing a downward variance and collecting cases that also "recognized double-counting as a factor warranting a below-Guidelines sentence"); *United States v. Estavillo-Avendano*, No. 1:13cr306-MHT (WO), 2014 WL 4792595, at *5 (M.D. Ala. Sep. 24, 2014) (granting downward variance from 41–51 months to 10 months in part because § 2L1.2's enhancement for criminal history "reaches farther than government interests justify"); *United States v. Garcia-Jaquez*, 807 F. Supp. 2d 1005, 1011–16 (D. Colo. 2011) (rejecting § 2L1.2 because it "is not based on empirical data"); *United States v. Reyes-Hernandez*, 624 F.3d 405, 420 (7th Cir. 2010) ("It has been observed by even strong defenders of the guidelines that the sentencing ranges called for under the guidelines for unlawful reentry cases are often unreasonably harsh and disproportionate to the seriousness of the offense."); *United States v. Bonilla*, 618 F.3d 102, 110 (2d Cir. 2010)

(recognizing the controversy surrounding § 2L1.2's offense-level enhancement because it "was enacted by the Sentencing Commission with little deliberation and no empirical justification"); *United States v. Pahua-Martinez*, No. 8:08-CR-415, 2009 WL 2003241, at *6–8 (D. Neb. 2009) (rejecting § 2L1.2 for policy reasons); *United States v. Carballo-Arguelles*, 446 F. Supp. 2d 742, 745 (E.D. Mich. 2006), *aff'd*, 267 F. App'x. 416 (6th Cir. 2008); *United States v. Macias-Prado*, No. 08-CR-30, 2008 WL 2337088, at *3 (E.D. Wis. June 6, 2008) (granting a downward variance in part because § 2L1.2's offense-level enhancement for criminal history produced a Guidelines "range greater than necessary to satisfy the purposes of sentencing"); *United States v. Apodaca-Leyva*, No. CR 07-1479 JB, 2008 WL 2229550, at *10 (D.N.M. Feb. 13, 2008) (granting a downward variance because § 2L1.2's criminal-history enhancement "is too great"); *United States v. Galvez-Barrios*, 355 F. Supp. 2d 958, 961–64 (E.D. Wis. 2005) ("Courts and commentators have criticized this aspect of § 2L1.2, as well as its general harshness.").

**D. Criminal History**

As noted above, Mr. Bautista-Duarte has three felonies involving domestic partners. He pled guilty and took responsibility for his actions. But he has gone a step further and taken measures to better himself. When he was first arrested on the Federal warrant, he was taken to Sherburne County Jail. As soon as he could, without prompting from his counsel, he began taking Dialectical Behavioral Therapy (DBT) classes at the Jail. A verification letter is attached to this pleading. DBT teaches behavioral classes with focus on mindfulness, distress tolerance, emotion regulation, and interpersonal skills. These skills are important with Mr. Bautista-Duarte's criminal past. Unfortunately, Mr. Bautista-Duarte

was moved to Carver County in August 2026 and was no longer able to participate in therapy.

In addition to the therapy, he has completed many courses on his tablet at Sherburne and Carver County Jails. He has completed 97 individual certificate programs. The course content addressed various types of wellness and self-improvement in the areas of physical and nutritional health, mental health and life skills, relationship and communication strategies, personal finance, and career-based technical skills, and re-entry skills. Mr. Bautista-Duarte completed 6 courses pertaining to physical health and nutrition. Example courses include "Eating Healthy," and "Health and Wellness Coaching Certification." Through these courses Mr. Bautista-Duarte learned strategies in maintaining nutrition and physical wellness. These strategies have been beneficial to Mr. Bautista-Duarte as he has been in custody and will be just as applicable when he is released. An additional 21 certificates were earned by Mr. Bautista-Duarte under the broad category of mental health and intentional living. The courses "Mindfulness," "Advanced Problem Solving," and "Understanding Anxiety and Worry," taught strategies to improve mental health and to live intentionally. Many of these courses used principles of psychology to nurture and optimize a growth mindset as well as the practice of positive coping strategies. He completed 8 courses that addressed a variety of skills to maintain healthy, sustained relationships and effective communication with others. Courses such as "Winning with Communication – Master Communication Skills" and "Advanced Parenting Skills" focused on communication strategies, conflict resolution, and soft skills for navigating interpersonal dynamics.

And finally, a total of 59 courses were completed by Mr. Bautista-Duarte in the broad categories of Personal Finance and Career-Based Technical Skills. In these courses, Mr. Bautista-Duarte learned about financial literacy and the "Basics of Investing." He has a special interest in business, and he therefore took many courses on topics such as entrepreneurship, transformational leadership, business accounting, and HR administrations. These courses have not only allowed Mr. Bautista-Duarte to explore topics he is interested in, but they have also provided him with a breadth of knowledge and skills he hopes to utilize once he is released from custody and living in Mexico. All the certificates were provided to the United States Probation Office.

It is important to note that while in custody, Mr. Bautista-Duarte completed the High School Equivalency Study Program, which demonstrated an outstanding commitment to learning and personal growth. He also completed the Rising Star Re-Entry Program, which is an 85-hour program targeting strategies and skills for reintegration into the community. Mr. Bautista-Duarte has shown a continued effort to make positive changes in his life by learning the necessary skills and strategies to do so. He is even more committed to ensuring that he utilize these same skills and strategies after he is released from custody. It is unclear if he will be released back to state custody or to ICE.

**E. State and Federal Custody**

Mr. Bautista-Duarte was arrested on May 7, 2026 and held in state custody. Without a writ and despite state holds, somehow the federal government brought Mr. Bautista-Duarte to a first appearance. He is in primary state custody and secondary federal custody. This means after his sentencing in Federal Court, Mr. Duarte will be returned to State

Court. He will be seen on two cases: A felony domestic probation violation (PSR, ¶ 31) and a false information to police (PSR, ¶ 37). If he is given custody credit time in state court, none of the time he has served from May 7, 2026 will be applied to his federal sentence. For sure he will not receive any custody credit from May 7, 2026 through June 3, 2026 on his federal case as that credit was applied to another state case. (PSR, ¶ 32). Respectfully, Mr. Bautista-Duarte requests that his federal sentence be "credit time served." If the Court imposes additional time, Mr. Bautista-Duarte requests the Court impose the sentence to run concurrent with any state sentence. That concurrent sentence will begin to run on the day of his federal sentence.

**F. Deterrence Consideration**

A time-served sentence is sufficient, but not greater than necessary, to promote respect for the law and achieve deterrence. While this constitutes a downward variance from the advisory Guidelines range, that advisory range represents *triplicate* punishment for Mr. Bautista-Duarte's criminal history, namely: (1) his criminal history category V; (2) his base-offense-level enhancement from 8 to 14; and (3) the government's denial of the 4-level Fast-Track departure. As affirmed by the Supreme Court, a Guidelines-range sentence "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Mr. Bautista-Duarte was present in the United States to escape threats in Guatemala. He understands that he will be removed from the United States at the conclusion of this case and his state cases. The punishment is beyond whatever sentence this Court may

impose. *See, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) ("We have long recognized that deportation is a particularly severe penalty." (cleaned up)); *United States v. Mendez-Velarde*, 798 F. Supp. 2d 1249, 1257 (D.N.M. 2011) (granting a downward variance in a drug case in part because the defendant "will be deported following his sentence"). Moreover, Mr. Bautista-Duarte understands that this country is expending more resources than ever before toward immigration enforcement. That reality amounts to real deterrence, too.

To ensure his success in Guatemala, Mr. Bautista-Duarte has concrete plans for his return. He will move to Mexico and work for a construction company. The work will allow him to continue to financially support his daughter and his mother and keep them safe.

**G. Supervision**

Finally, Mr. Bautista-Duarte requests that the Court impose no term of supervised release to follow his custodial sentence. As the Guidelines explain, the Court "ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable [noncitizen][1] who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). Because no statute mandates supervised release and because Mr. Bautista-Duarte will be removed from the country, he

1 In recent years, federal courts, including the Supreme Court, have begun using the word "noncitizen" to refer to the statutory term "alien," apparently because of the latter term's tendency to dehumanize people without lawful status in the United States. *See, e.g.*, *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (Justice Brett Kavanaugh explaining the Court's decision to use the word "noncitizen" rather than "alien," even though that is the term used by statute).

respectfully requests the Court impose a sentence of time served with no supervision to follow. This is just punishment and will adequately deter future criminal conduct.

## CONCLUSION

Because of the arguments made in this pleading and the background noted in the PSR, a sentence of time served is justified and warranted in this case. Respectfully, Mr. Bautista-Duarte requests such a sentence with no supervision to follow.

Dated: October 2, 2026

Respectfully submitted,

*s/Manny K. Atwal*

MANNY K. ATWAL
Attorney ID No. 282029
Attorney for Mr. Bautista-Duarte
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415